IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-HC-2147-D

| | | |
|---|---|---|
| RUDOLPH JEROME WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| LARRY DAIL, | ) | |
| | ) | |
| Respondents. | ) | |

Rudolph Jerome Williams ("petitioner" or "Williams"), a state inmate proceeding pro se, petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [D.E. 1, 4]. On August 25, 2010, Larry Dail ("respondent") filed a motion to dismiss the petition as untimely and successive [D.E. 9]. On August 26, 2010, the court notified Williams of his right to respond [D.E. 11]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On September 16, 2010, Williams responded in opposition to the motion to dismiss [D.E. 12]. As explained below, respondent's motion to dismiss is granted.

I.

On April 18, 2002, in Craven County Superior Court, a jury convicted Williams of conspiracy to commit armed robbery and armed robbery. Am. Pet. ¶¶ 1–6; State v. Williams, 161 N.C. App. 742, 590 S.E.2d 23, 2003 WL 22951934, at *1 (2003) (unpublished table decision). The court sentenced Williams (a habitual felon) to consecutive terms of 94–122 and 116–149 months' imprisonment. Am. Pet. ¶¶ 3–5; Mem. Supp. Mot. Dismiss 1. Williams appealed his convictions, and on December 16, 2003, the North Carolina Court of Appeals found no prejudicial error. Id. ¶ 9; Williams, 2003 WL 22951934, at *4. Williams filed a petition for discretionary review in the

North Carolina Supreme Court, which was denied on May 6, 2004. Am. Pet. ¶ 9; State v. Williams, 358 N.C. 380, 598 S.E.2d 141 (2004). Williams did not file a petition for certiorari in the United States Supreme Court. Am. Pet. ¶ 9.

The North Carolina Court of Appeals summarized the facts of this case as follows:

> The State's evidence tended to show that on the rainy morning of 23 July 2001, two men dressed in dark clothing, white gloves and singularly armed with what appeared to be a serrated kitchen knife, entered a convenience store in New Bern, North Carolina with umbrellas collapsed over their heads. The men confronted the store manager, Barbara Belote, at the door of an office where she had been counting cash and told her it was a robbery. Ms. Belote told them to take the money; they took $2477.00 in cash, a pack of cigarettes and said "have a nice day." Thereafter, Ms. Belote called the police. After watching the store's surveillance camera video and hearing her descriptions of the suspects, one of whom she recognized as Dexter Spencer, a regular customer, the responding officers initiated an investigation.
>
> Sgt. Dombrowsky set up a perimeter check north-west of the store while Officer DuBay brought a police canine to the site. After sniffing an umbrella left behind by the robbers, the canine led the officers to an apartment area before losing the scent. Thereafter the officers walked with the dog along an area where the grass had been pushed down. That led the officers to a fence at the rear of an apartment owned by [Williams's] sister, Farrah Baker. At the apartment unit, Ms. Baker ultimately consented to the officers searching her apartment. After conducting a visual sweep of the apartment, Lieutenant Godette and Sgt. Dombrowsky heard a noise coming from overhead. Sgt. Dombrowsky stated loudly that the police were investigating a robbery and demanded that the persons overhead come down. Upon receiving no response, he sprayed pepper spray into the attic prompting Dexter Spencer to come down. Thereafter, the officers found [Williams] in the attic, buried under insulation. A further search of the apartment revealed $2,428.00, three cream colored gloves and a pair of black jean shorts.
>
> As a result of the investigation, the officers arrested Dexter Spencer and [Williams]. At his trial, Dexter Spencer pled guilty, but never implicated [Williams]. At [Williams's] trial, after a voir dire hearing, the trial judge instructed Ms. Baker not to testify about [Williams's] expressed fear of being arrested on a separate, unrelated charge. Ms. Baker was allowed to testify that [Williams] was at her home when the store was being robbed, from 7:00 a.m. until 10:30 or 11:00 a.m. As rebuttal, the State offered Gloria Scott's testimony that between approximately 7:30 a.m. and 8:30 a.m., [Williams] was not at his sister's home, but rather, was picking up cigarettes and beer for her.

Williams, 2003 WL 22951934, at *1.

On April 5, 2006, Williams filed a pro se motion for appropriate relief ("MAR") in Craven County Superior Court. Am. Pet. ¶ 11; Mot. Dismiss, Ex. 3 (Jan. 29, 2007 order denying MAR). On January 29, 2007, the court summarily denied Williams's MAR. Am. Pet. ¶ 11; Mot. Dismiss, Ex. 3 (Jan. 29, 2007 order denying MAR). On May 10, 2007, Williams filed a pro se certiorari petition in the North Carolina Court of Appeals concerning his MAR. Am. Pet. ¶ 11; Mot. Dismiss, Ex. 4 (petition for certiorari). On May 21, 2007, the North Carolina Court of Appeals denied the certiorari petition. Mot. Dismiss, Ex. 6 (May 21, 2007 order). On July 30, 2007, Williams filed his first federal habeas petition, which the district court dismissed as untimely on May 2, 2008. Williams v. Dail, No. 5:07-HC-2142-FL, [D.E. 12], at 2–5 (E.D.N.C. May 2, 2008) (unpublished). Williams appealed, and the United States Court of Appeals for the Fourth Circuit dismissed his appeal on June 26, 2009. See Williams v. Dail, 334 F. App'x 573, 574 (4th Cir. 2009) (per curiam) (unpublished).

On August 28, 2009, Williams filed a second MAR in Craven County Superior Court. Am. Pet. ¶ 11; Mot. Dismiss, Ex. 8 (copy of MAR). On October 12, 2009, the court summarily denied Williams's MAR. Am. Pet. ¶ 11; Mot. Dismiss, Ex. 9 (Oct. 12, 2009 order). On November 2, 2009, Williams filed a petition for certiorari in the North Carolina Court of Appeals. Am. Pet. ¶ 11; Mot. Dismiss, Ex. 10 (petition). On November 19, 2009, the North Carolina Court of Appeals denied certiorari. Am. Pet. ¶ 12; Mot. Dismiss, Ex. 12 (Nov. 19, 2009 order). On November 30, 2009, Williams filed a motion in the North Carolina Supreme Court, which dismissed the motion on January 28, 2010. State v. Williams, 363 N.C. 812, 693 S.E.2d 141 (2010).

On July 7, 2010, Williams filed this habeas petition. On July 16, 2010, the court directed Williams to resubmit his petition on the appropriate forms. On July 21, 2010, Williams submitted his amended petition, alleging: (1) he received ineffective assistance of trial counsel by counsel's

3

failure to subpoena his "co-defendant for exculpatory material[;]" (2) his indictments were defective because they did not allege the theory of acting in concert; and (3) "misjoinder" because of the defective indictments. See Am. Pet. ¶ 12.

II.

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions, elements of a cause of action, or bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss filed in a section 2254 proceeding "tests the legal sufficiency of the petition, requiring the federal habeas court to 'assume all facts pleaded by the § 2254 petitioner to be true.'" Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009) (quoting Wolfe v. Johnson, 565 F.3d 140, 169 (4th Cir. 2009)). As part of a Rule 12(b)(6) motion, a court also may consider a challenge based on the one-year statute of limitations. In ruling on a motion to dismiss, the court may consider the record of the state habeas proceeding, including affidavits and evidence presented in such proceedings, as well as other matters of public

4

record. See, e.g., Walker, 589 F.3d at 139.

Respondent contends that the petition should be dismissed because the one-year statute of limitations has run. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a person in custody pursuant to the judgment of a state court must file any petition for a writ of habeas corpus within one year. See 28 U.S.C. § 2244(d)(1). The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action ... is removed ... ;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

The limitation period under section 2244(d)(1) is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Carey v. Saffold, 536 U.S. 214, 216–17 (2002); Taylor v. Lee, 186 F.3d 557, 560 & n.2 (4th Cir. 1999). An application for post-conviction or other collateral review is "pending" from initial filing in the state courts until final disposition in the state courts. See Saffold, 536 U.S. at 219–20; Taylor, 186 F.3d at 561. The period between the time a petitioner's conviction becomes final and the time that a petitioner files a state application for post-conviction relief counts against the one-year period of limitation. See, e.g., Hernandez v. Caldwell, 225 F.3d 435, 438 (4th Cir. 2000); Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). The

5

statutory period then resumes after the state court of appeals denies a petitioner's certiorari petition. See Hernandez, 225 F.3d at 438–39.

Initially, the court must determine when Williams's judgment became final. See 28 U.S.C. § 2244(d)(1)(A). The North Carolina Court of Appeals affirmed Williams's conviction on December 16, 2003, and the North Carolina Supreme Court denied discretionary review on May 6, 2004. Because Williams failed to seek further direct review, his conviction became final no later than August 4, 2004, 90 days after the North Carolina Supreme Court denied discretionary review. See, e.g., Clay v. United States, 537 U.S. 522, 527 (2003). Thus, Williams's one-year period of limitations began to run on August 4, 2004, and ran for 365 days until August 4, 2005. See, e.g., Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000). Williams's subsequent MARs did not serve to reopen his time for filing a habeas petition. See Minter, 230 F.3d at 665 ("Although the period of time that Minter spent pursuing state post-conviction relief is excluded from the one year limitation period, see 28 U.S.C. § 2244(d)(2), more than one year had otherwise elapsed from April 24, 1996 until he filed his § 2254 petition."). Therefore, absent tolling, Williams's petition is untimely.

Williams makes two arguments. First, Williams states that he has "newly discovered evidence" in the form of an affidavit from his co-defendant implicating a third man rather than Williams in the robbery. Resp. Opp'n Mot. Dismiss 1, 3, 5. Williams obtained this affidavit in July 2008. Id. at 2. Williams did not attach this affidavit to either his petition or response in opposition to the motion to dismiss, but he did attach it to his August 28, 2009 MAR. See Mot. Dismiss, Ex. 8 at 62 (July 30, 2008 Aff. Dexter Spencer). The affidavit states that "Williams did not undertake any role in the armed robbery or conspiracy to commit armed robbery - Trade Mart of New Bern, North Carolina. The assilant [sic] was Damien Eugene." Id.

6

Essentially, Williams argues that he is innocent.

> The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

Schlup v. Delo, 513 U.S. 298, 329 (1995). "In assessing the adequacy of Petitioner's showing, . . . the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on 'actual innocence' allows the reviewing tribunal to consider the probative force of relevant evidence that was either excluded or unavailable at trial." Id. at 327–28. The court must evaluate the credibility of the new evidence, and the evidence must be examined in light of the entire record. See O'Dell v. Netherland, 95 F.3d 1214, 1250 (4th Cir. 1996). Credible claims of actual innocence are "extremely rare." Schlup, 513 U.S. at 321.

Here, Spencer's affidavit does not meet Schlup's demanding standard. Indeed, the North Carolina Court of Appeals expressly noted that Spencer never implicated Williams and that the state's case against Williams was "wholly circumstantial." Williams, 2003 WL 22951934, at *2. Even if Spencer had testified that Williams did not commit the robbery with him, the government showed that the police tracked the robbers from the convenience store directly to the home of Williams's sister where Spencer and Williams were hiding together, and where the police recovered the stolen money and clothing matching the description of the clothing worn by the robbers.

7

Additionally, Williams presented an alibi defense at trial in the form of his sister's testimony[1] that Williams was at her home when the store was being robbed. The jury rejected this defense in favor of the state's rebuttal witness, who testified that at the time of the robbery, Williams "was not at his sister's home, but rather, was picking up cigarettes and beer for her." Williams, 2003 WL 22951934, at *1. Moreover, Williams fails to explain why he waited until July 208 to obtain Spencer's affidavit, or why his "pending litigation - 1st habeas[,]" Resp. Opp'n Mot. Dismiss 2, prevented him from filing his second MAR for over a year after obtaining Spencer's affidavit. See Daniels v. Uchtman, 421 F.3d 490, 492 (7th Cir. 2005). Thus, Williams's argument fails.

Next, Williams seeks equitable tolling. AEDPA's one-year statute of limitations is subject to equitable tolling. Holland v. Florida, 130 S. Ct. 2549, 2560–62 (2010). Equitable tolling applies only if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 2562 (quotation omitted); see Green v. Johnson, 515 F.3d 290, 304 (4th Cir. 2008). A court may allow equitable tolling under section 2244 in those "rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Green, 515 F.3d at 304 (quotation omitted). However, "any

---

[1] On direct appeal, Williams argued that the trial court erred by excluding his sister's "testimony that [Williams] was hiding in the attic because he feared being arrested for an unrelated case." Williams, 2003 WL 22951934, at *2. The Court of Appeals agreed with Williams that this testimony "would have tended to undermine the inference of guilt from [Williams's] flight from police," but found the error non-prejudicial. Id. The court held that even if this testimony had been admitted, it "would have had no reasonable possibility of affecting the verdict" because "[t]he record shows evidence that [Williams] was found hiding in the attic with Dexter Spencer who admitted to participating in the robbery that had involved two men, wore the clothes identical to that worn by the robbers and was found where the stolen money was recovered." Id. Likewise, this court concludes that even Spencer's proposed testimony along with the admission of this excluded testimony of Williams's sister would not fundamentally alter the outcome of the trial.

8

invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Harris, 209 F.3d at 330.

In support of equitable tolling, Williams notes that he "is a layman at law and is not well acquainted with its higher sciences," and relies on the merits of his defective indictment claim. Resp. Opp'n Mot. Dismiss 1, 3–6. However, unfamiliarity with the legal process, lack of representation, or even illiteracy do not constitute grounds for equitable tolling. See, e.g., United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); Harris, 209 F.3d at 330–31 (collecting cases); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999) (per curiam). Moreover, "the merits of the underlying claim are not part of the equitable tolling analysis." Rouse v. Lee, 339 F.3d 238, 253 n.17 (4th Cir. 2003) (en banc). Accordingly, Williams has failed to satisfy the "extraordinary circumstances" necessary for equitable tolling.

III.

As explained above, respondent's motion to dismiss [D.E. 9] is GRANTED. The application for habeas corpus relief is DISMISSED as time-barred. The court DENIES a certificate of appealability. See 28 U.S.C. § 2253(c)(2). The Clerk of Court is DIRECTED to close this case.

SO ORDERED. This 11 day of March 2011.

JAMES C. DEVER III
United States District Judge